FORD *vs.* C. & J. ANDREWS.

A *discharge* obtained by an *insolvent debtor* from all his debts, is no bar to an action by an *accommodation endorser* for money paid by him subsequent to the discharge, in satisfaction of a note made by the insolvent.

The provision in the *revised statutes* that such discharge may be pleaded in bar of any action incurred by the insolvent, in consequence of the payment by any party to such note of the money thereby secured, whether such payment be made prior or *subsequent* to the execution of the assignment by the insolvent, applies to *future contracts*, and not to contracts made *previous* to the statute going into operation.

DEMURRER to plea. The plaintiff declared in *assumpsit* specially, that for the accommodation of the defendants he endorsed a note drawn by them, dated 24th July, 1828, payable in 90 days, which he had been ˙compelled to pay, and did pay on 1st January, 1831, to the Jefferson County Bank, where the note had been discounted for the benefit of the defendants. Various pleas were put in by the defendants; and among them was a plea that on the 21st October, 1830, I. Andrews duly obtained a *discharge* as an *insolvent debtor*, from *all debts* owing by him. The discharge was granted by a commissioner authorized to grant such discharges, under that portion of the statute which treats of " voluntary assignments made pursuant to the application of an insolvent and his creditors." To this plea the plaintiff demurred, and the defendant joined in demurrer.

*T. C. Chittenden,* for defendant. By the *revised statutes* the discharge obtained by the defendant may be pleaded in bar of any action upon any contract made by him since 12th April, 1813, within this state; and in bar of any action upon any liability of such defendant, incurred by *making* or endorsing any promissory note or bill of exchange previous to the execution of his assignment; or incurred by him in consequence of the *payment of any party to such note* or bill of the whole or any part of the money secured thereby, whether such payment be made prior or *subsequent* to the execution of the assignment by such defendant. 2 *R. S.* 22, § 32. This statute embra-

ces all contracts made by the insolvent since the 12th April, 1813, as it is expressly declared to be a revisal and continuation of the act entitled "An act for giving relief in cases of insolvency," passed on that day.

*W. D. Ford,* in person, contra.

*By the Court,* Savage, Ch. J.   The only question is whether this plea is a bar to the plaintiff's action against Ira Andrews? This very question was decided in *Frost* v. *Carter,* 1 *Johns. C.* 73.   2 *Caines' Cas. in Er.* 310, *S. C.*   The plaintiff there had endorsed a note for the defendant; it was not paid, and the plaintiff was charged as endorser.   The defendant was discharged under the insolvent act, and *afterwards* the plaintiff paid $3000, took up the note, and brought his suit to recover the money so paid.   The insolvent act then in force was the act of 21st March, 1788, by which the discharge operated upon all debts due at the time of the assignment of the insolvent's estate, and such as were contracted before that time, though payable afterwards.   It was held that until the endorser had paid the money and taken up the note, he could not be said to have a certain and ascertained debt due to him from the defendant; of course could not receive from the assignees any dividend of the insolvent's estate; that the plaintiff's debt accrued subsequently to the discharge, and in consequence of the payment of the money, and therefore the discharge was no bar to a recovery.   The facts in this case are similar, and the insolvent act of 1813, which was in force when the note was executed, is similar in its provisions, so far as regards the operation of the discharge to the act of 1788. The same rule is therefore applicable.

The defendant's counsel has been induced to present this question in consequence of the provisions on this subject in the revised statutes.   The article concerning voluntary assignments, 2 *R. S.* 15, is declared to be a revisal and continuation of the act of 1813, and the 30th paragraph, 2 *R. S.* 22, § 30, declares that a discharge obtained according to the provisions thereof shall discharge the insolvent from all debts due at the time of the assignment, or contracted for before that time,

though payable afterwards, founded upon contracts made since the 12th April, 1813. The 31st section relates to contracts to be made after the revised statutes should take effect as a law. By it the discharge is to exonerate the insolvent from all liabilities incurred by *drawing* or endorsing a promissory note or bill of exchange, or in consequence of the payment of the money by any party to such instrument, whether the payment be prior or *subsequent to the assignment* of the insolvent's estate. This section is new in part; the act of 1819, *Laws of* 1819, *p.* 118, § 11, had gone so far in changing the law as pronounced according to the construction of the previous statutes, as to exonerate by the discharge the *endorser* of a promissory note, though the note had not become due at the time of the discharge, and permitted the holder to come in for a dividend in the same manner as if the bill was due. This section extends the protection of the discharge to the *maker* as well as the endorser of a promissory note.   The 32d section provides that a discharge under this article may be pleaded or given in evidence under the general issue and notice, in bar of any action upon any contract made since the 12th April, 1813, &c. and in bar of any action upon any liability of such insolvent, incurred by making or endorsing any promissory note or bill of exchange, previous to the assignment, or in consequence of the payment by any party to such note or bill of the money secured thereby, whether such payment be made prior or subsequent to the assignment.   It is contended by the counsel for the defendant that by this section the discharge is a bar to this action, the contract having been made since the 12th April, 1813.

The principal object of the 32d section seems to be to declare how a discharge may be made evidence; and if in again declaring the effect of the discharge there is an apparent discrepancy between this section and the preceding section, it is the duty of the court so to construe the different sections as to give effect to them all, if that be possible.   There is no difficulty in this case.   If the legislature had intended that a discharge under this article should discharge the maker of a note executed since the 12th April, 1813, and before this article took effect, then the 31st section was entirely useless; but by

introducing that section it is clear the legislature intended that a different rule should prevail, with regard to future contracts, from that which constituted the law of previous contracts. To have applied the new rule to previous contracts would have been an infringement of the constitutional inhibition which forbids the impairing the obligation of a contract. The legislature no doubt intended to say that a discharge obtained under this article should be a bar, in relation to previous contracts, from all debts due at the time of the assignment, and as to all notes made since that article became a law, it should be a bar to all liabilities incurred by making or endorsing such notes or bills, or in consequence of the payment of the same by a party thereto subsequent to the execution of the assignment. This construction gives effect to the whole statute, makes it consistent with itself, and with the constitution, and the several adjudications touching the constitutionality of laws affecting the obligation of a contract. According to this construction, the discharge in this case is no bar to the plaintiff's action.

Judgment for plaintiff on the demurrer.