Rome Exchange Bank v. Eames.

---

## ROME. EXCHANGE BANK v. EAMES.

### December, 1864.

It is a rule in equity, not affected by the Code of Procedure, that a party must recover according to the case made by his complaint, or not at all ; *secundum allegata* as well as *probata.* No decree can be made in favor of a plaintiff on grounds not stated in his complaint, nor relief granted for matters not charged, although they may be apparent from some parts of the pleadings and evidence.[*]

A trust of real and personal estate, providing for the payment of debts, and reserving the income of the surplus for the use of the grantor, is valid as against subsequent creditors, at least as to the real property, after the personal property has been appropriated.[†]

A deed of trust, for the payment of the grantor's debts generally, should be confined to debts existing at the time when the deed was made. A debt subsequently originating is not entitled to payment out of the trust estate.

[*] But compare Hale *v*, Omaha N. Bk., 49 *N. Y.* 626.
[†] See Graff *v*. Bonnett, 31 *N. Y.* 9.

Plaintiff brought this action in the supreme court, against Sarah Eames and Charles P. Kirkland, to obtain, from trust property in the hands of Kirkland, satisfaction of a judgment recovered by plaintiff against the Manchester Manufacturing Company, of which defendant Eames was a stockholder.

The facts, as alleged in the complaint, and found by the judge, were: On September 3, 1833, Mrs. Sarah Eames executed a deed of assignment of a large amount of property, both real and personal, to Kirkland and one Walter S. Eames, in trust for certain purposes, thus expressed : " 1st. To pay all my just debts of every description," the intent and object of this clause being fully to secure the payment of all the " *debts due from me,* of whatever nature the same may be." 2nd. To pay the expenses of the trust.    3rd. To invest the balance, and from the net income thereof, and such further and other sums as may be necessary, to provide for her reasonable support and maintenance during her life. 4th. At her decease, to distribute all that remains of the property conveyed, and its proceeds, to heirs named.

This deed was duly delivered to the trustees, who entered on their duties, and out of the transferred property paid the *debts* of Mrs. Eames, so far as they were then ascertained.

Upward of four thousand dollars now still remained in the hands of Kirkland, the surviving trustee, under the trust, and for the purposes expressed in the deed.    Before and at the time of making the trust deed, Mrs. Eames owned three thousand and eighty-two dollars of the stock of the Manchester Manufacturing Company, and it never was transferred by her to said trustees on the books of the company, but continued to stand in her name till the company was dissolved, August 8, 1854, at which time the plaintiffs were creditors of the company to the amount of over three thousand two hundred dollars.    Plaintiffs, as such creditors, lately brought an action against Mrs. Eames, to recover so much of that debt as equalled the amount of stock held by her in said company, and, in December, 1855, recovered judgment against her for three thousand one hundred and thirty-eight dollars and fifty-eight cents; and after execution unsatisfied thereon, plaintiffs requested the trustee to pay the judgment, and he refused

so to do. Mrs. Eames owed no other debts, and was under no pecuniary obligations save said judgment.

2. The judge further found, that the Manchester Manufacturing Company was organized as a corporation, under the manufacturing corporations act of March 22, 1811; that all the property held by defendant, Sarah Eames, passed to the trustees in the deed of trust, at its date; that her indebtedness at that time exceeded the amount of her personal property; that the property still remaining in the hands of the trustee did not equal in value the real estate that passed by such deed; that there was a perpetual annuity of two hundred and fifty dollars charged upon the trust property then remaining, payable to St. Stephen's Church, subject to which the trustee held the funds; that the trust property then amounted, of personal, to about four thousand seven hundred and fifty dollars, and of real estate, to about six thousand dollars; and that the persons named in the trust deed, for whom provision was there made, were some of them living, and some were infants.

The judge found, as conclusions of law: 1st. That the complaint assumed the validity of the assignment from Mrs. Eames to defendant. 2nd. By the trust deed, Mrs. Eames became divested of all interest in the trust property, and the entire title passed to the trustees, subject to the trusts, first, to pay the debts then existing; second, to apply the income to the support of Mrs. Eames during life; third, remainder to her children and heirs. 3rd. The debt for which this action was brought did not exist at the time of executing the trust deed, but accrued in 1854, on the dissolution of the company. 4th. It was not, therefore, within the purpose of the trusts contained in the deed. 5th. There was, therefore, no equitable reason why the capital of the trust funds, in equity belonging to the children and heirs of Mrs. Eames, should be applied to its payment.

Plaintiffs excepted " to each and to every one of the findings of fact, and of the findings of law by the court, and to each one separately."

The judge ordered the complaint dismissed, with costs. Judgment entered accordingly, was affirmed by the court at

general term. Plaintiffs appealed. Pending the appeal, Mrs. Eames died.

*F. Kernan,* for plaintiff, appellant.—As to the plaintiffs' right to payment out of the trust estate, cited Slee *v.* Bloom, 20 *Johns.* 669; Rosevelt *v.* Brown, 11 *N. Y.* 148; Worrall *v.* Judson, 5 *Barb.* 210; Corning *v.* McCullough, 1 *N. Y.* 47; Stanley *v.* Stanley, 13 *Shep.* 191; 10 *Eng. L. & Eq.* 171. Otherwise the deed would be void as to creditors. Barney *v.* Griffin, 2 *N. Y.* 365; Goodrich *v.* Downs, 6 *Hill,* 438; Leitch *v.* Hollister, 4 *N. Y.* 211; Nicholson *v.* Leavitt, 6 *Id.* 51: The deed was void as against plaintiffs' judgment. Cases above, and McLean *v.* Britton, 19 *Barb.* 450; Fiedler *v.* Day, 2 *Sandf.* 594; Mackie *v.* Cairns, 5 *Cow.* 547; Grover *v.* Wakeman, 11 *Wend.* 187; Bramhall *v.* Ferris, 14 *N. Y.* 41.

*C. H. Doolittle,* for defendant, respondent;—As to the point that the debt was not within the deed, cited 1 *Murd. Chancery,* 433, ed. of 1817 (p. 554, ed. of 1822); 1 *Hill on Trustees,* 339, 357; Pratt *v.* Adams, 7 *Paige,* 615. And see 20 *Johns.* 683; 11 *N. Y.* 156; Young *v.* Winter, 81 *Eng. Com. Law,* 399 (16 *C. B.* 401); Boorman *v.* Nash, 17 *Eng. Com. Law,* 73 (9 *B. & C.* 145); Yollop *v.* Ebers, 20 *Eng. Com. Law,* 655 (1 *B. & Ald.* 698); Ford *v.* Andrews, 9 *Wend.* 312; Mechanics', &c. Bank *v.* Capron, 17 *Johns.* 467; Doolittle *v.* Southworth, 3 *Barb.* 79; *Hill on Trustees,* 357. That under the pleadings plaintiffs could not recover. Kelsey *v.* Western, 2 *Comst.* 506; Bailey *v.* Rider, 6 *Seld.* 363, 370; Thomas *v.* Austin, 4 *Barb.* 265, 272, 273; N. Y. N. Protective Ins. Co. *v.* National Ins. Co., 20 *Id.* 473; and see 2 *Seld.* 179, 236. That having set up the deed, plaintiffs could not object to its validity. 1 *Seld. Notes,* 15; Ontario Bank *v.* Root, 3 *Paige,* 478, 481; Green *v.* Morse, 7 *Barb.* 332; Pratt *v.* Adams, 7 *Paige,* 615. If the deed were valid Mrs. E. had no interest under it which plaintiffs could reach. *Hill on Trustees,* 362–3; 1 *Comst.* 122; 5 *Paige,* 319; 1 *R. S.* 729, §§ 60, 79; *Hill on Trustees,* 231 (marg. p.); L'Amanran *v.* Van Rensselaer, 1 *Barb. Ch.* 34; Noyes *v.* Blakeman, 2 *Seld.* 567; 1 *R. S.* 730, §§ 63, 82; *Id.* 729, §§ 60, 79; Van Epps *v.* Van Epps, 9 *Paige,* 237, 240; Clute *v.* Bool, 8 *Id.*

83; Hawley *v.* Jones (Justice BRONSON's opinion), 16 *Wend.* 165; De Graw *v.* Clason, 11 *Paige,* 137. That the deed was valid. 1 *R. S.* 728–9, § 55; 2 *Seld.* 567; 9 *Paige,* 237, 240; 7 *Id.* 272; *Burr. on Ass.* 2 ed. 442, &c.; 22 *Wend.* 483, 494, 495; 1 *Smith,* 9, 96, 123–4.

WRIGHT, J.—The general exception in the case, if it raises any legal question to be reviewed here, is the single one, whether the plaintiff's judgment against Mrs. Eames is a *debt,* within the provisions of the trust deed, which the defendant Kirkland is bound to pay in the execution of the trust. Points, it is true, are now made that the deed is fraudulent and void as to the plaintiffs, creditors of Mrs. Eames, and that in any view it was error to dismiss the complaint, as she had a valuable equitable interest in what remained of the trust property, which the plaintiffs were entitled to; but in the complaint there was no allegation or pretense that the trust deed was for any reason fraudulent or invalid, or that Mrs. Eames had any interest in the trust property applicable to the payment of the plaintiffs' debt, nor were there any facts found, or legal conclusions of the court, to which exception was taken, bringing up either point for review. The plaintiffs treat the trust deed as valid in their complaint, not seeking to impeach it, but claiming the benefit of it as creditors of Mrs. Eames, within the scope of the trust; and the judgment demanded is, that the trustee pay the plaintiffs' debt out of any trust funds in his hands, or transfer sufficient of the property to pay it. Instead of alleging in the complaint that the trust deed was void as to them, or intended to defraud creditors, the plaintiffs claimed a beneficial interest under it, and the pleading was not framed to reach any equitable interest of Mrs. Eames, if she had any, but to obtain payment of their debt from the funds or estate remaining in the hands of the trustee, on the ground that it was provided for in the deed. It is a rule in chancery, not affected by the Code of Procedure, that a party must recover according to the case made by his complaint, or not at all; " *secundum allegata,*" as well as " *probata.*" No decree can be made in favor of a plaintiff on grounds not stated in his complaint, nor relief granted for matters not

charged, although they may be apparent from some part of the pleadings and evidence. Kelsey *v.* Western, 2 *N. Y.* 500; Ferguson *v.* Ferguson, *Id.* 360; Bailey *v.* Rider, 10 *Id.* 363; Thomas *v.* Austin, 4 *Barb.* 265; New York Central Ins. Co. *v.* National Protection Ins. Co.,* 20 *Id.* 473. If it be, as is claimed, that the deed was void as against the plaintiffs' judgment, for the reason that it was a conveyance by Mrs. Eames of her property in trust for her own use, or that it was made to hinder, delay, and defraud her creditors, these matters should have been alleged. Not being alleged in the pleading, no proof of them could properly be received, and no judgment predicated upon them. Chautauque County Bank *v.* White, 6 *N. Y.* 236; Bailey *v.* Rider, *supra.* Most clearly, when a party claims the benefit of a trust conveyance, treating it as valid in his complaint, and nowhere seeking to impeach it, he is not entitled to any relief on the ground that it is void or fraudulent, or intended to defraud creditors; and this is so, although it may appear to be fraudulent or void on the pleadings and evidence. Ontario Bank *v.* Root, 3 *Paige,* 478.

In Bailey *v.* Ryder, a judgment creditor sought to have certain lands applied in payment of his demand, on the ground that the purchase of them was in trust for the benefit of Ryder, the judgment creditor. The answer asserted, and the evidence showed, that the purchase and investment made were not for the benefit of Ryder, but for his children. The complaint had gone solely upon the ground that the judgment debtor was the equitable owner of the lands, they having been purchased by his direction and with his money, and the title taken and held for his use and benefit by two other defendants. This being disproved, and the trust shown being not for the judgment debtor but for his children, the plaintiff attempted to shift his claim for relief, contending that the investment of the sum of fifteen hundred dollars by the judgment debtor, although in trust for his children, was intended to defraud his creditors then existing, or that should thereafter exist; that it was in the nature of a voluntary conveyance to defraud creditors, and was, therefore, void as to such creditors. But this court said

---

* But see reversal, in 14 *N. Y.* 85.

that a sufficient answer to this was that the plaintiff had made no such case by his bill. The court say: "There is no allegation or suggestion in the bill that the investment made by Ryder for the benefit of his children was voluntary or fraudulent as against his creditors. The only point which the bill attempts to put in issue in respect to these lands is whether or not the purchase of them was in trust for the benefit of Ryder; there is no allegation that if the character of the transaction was, in fact, nominally as set up by the defendants, that it was fraudulent. . . If his (the plaintiff's) rights depended upon the fact that the purchase and investment for the benefit of the children of Ryder were fraudulent as against him, it should have been so alleged, for it is an invariable and universal rule of the court of chancery to found its decrees on some matter put in issue between the parties by the bill and answer. . . . . It makes no difference whether the defendant has, by way of avoidance, set up a distinct and independent fact, or merely denied the matters alleged in the bill. If the existence and truth of the facts thus set up by a defendant be controverted, the defendant must prove it, and the complainant may examine witnesses to disprove it; but when the fact set up by a defendant is made out, either by proof or the admission of the complainant, and destroys his title to relief, it is not admissible for the complainant, after the fact is made out, to impeach it on a ground not taken in his bill, and on a ground not arising from the issue between the parties.

"If the complainant's rights depended upon showing that the creation and execution of the trust for the use and benefit of the children of Ryder was voluntary and fraudulent as against him, his course was plain. He should have amended his bill and stated the facts on which he meant to impeach it. The defendants would have been required to answer such facts, and, if denied, it would then have been competent to have supported the allegations by proof. The rule is explicit and absolute that a party must recover in chancery according to the case made by his bill, or not at all."

The doctrine of this case is in harmony with the law as it now exists, the Code providing that " the relief granted to the

plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but, in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue." *Code of Pro.* § 275. In the present case, the only relief that could have been granted "consistent with the complaint and embraced within the issue" was to direct the payment of the plaintiff's judgment by the trustee as being a debt provided for in the trust deed itself. A decree setting aside the deed on the ground that it was fraudulent or void as against the plaintiffs, that they might subject the property in the hands of the defendant Kirkland to the payment of the judgment, would have been utterly inconsistent with the case made by the complaint, and wholly without any issue raised by the pleadings.

Looking, therefore, at the matters charged, the issues raised and tried, the facts found, the legal conclusions of the judge, and the exceptions to such conclusions, as has been stated, the only point for our consideration is whether the debt of the plaintiff was within the provisions of the deed of trust, which, in the performance of his duty, the defendant Kirkland was bound to pay. If it was not, the complaint was properly dismissed. On the contrary, if it was, as the trustee had sufficient of the trust property in his hands to pay it, the plaintiffs were entitled to judgment. The dismissal of the complaint, it is true, was not excepted to; but, as the judge evidently based his decision on the ground that the debt for which the action was brought did not come within the purpose of any of the trusts contained, in the trust deed, if he was wrong in this, the error should lead to a reversal of the judgment.

Now, was the debt in suit embraced within the trust? The deed was executed and took effect on September 5, 1853. It conveyed all the property, real and personal, of Mrs. Eames to the defendant Kirkland and Walter S. Eames (since dead), subject to certain trusts. Amongst these, and primarily, was to pay her just debts of every description, including those specified in the schedule annexed to the conveyance, and any others due from her not thus specified. This was undoubtedly a trust for the payment of all debts of the grantor contracted at

.the time of making the deed. The deed provided for no future debt, and the trustee was bound, by the terms of the trust, to pay only such debts as the grantor owed when the deed was executed. Where a deed of trust is made for the payment of debts, it extends only to debts contracted at its date. 1 *Madd. Ch.* 554; *Hill on Trustees,* 339, 357. The plaintiff's debt had no existence for more than twenty years subsequent to the creation of the trust, and then only became a debt against Mrs. Eames by force of the statute. She happened to be a stockholder in the Manchester Manufacturing Company at the time of its dissolution in 1854, which company then owed the plaintiff a debt, for which she became individually liable, the statute providing "that for all debts that shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their respective shares of stock in the said company, and no further." *L.* 1811, § 7; 1 *R. L.* 245. Can this, then, be said to be a debt entitled to payment out of the trust estate, according to the terms of the deed of trust? It seems plain to me that it is not. It had no existence when the deed was executed, in any shape or against any one. The bank itself was not organized until long afterward. If it did not exist, Mrs. Eames could neither have owed it or been liable for it; certainly owed no liability of any kind to the plaintiffs, who, as well as the debt, then had no existence. The fact that Mrs. Eames, when the trust conveyance was executed, was a stockholder in a company authorized to contract debts in the future for which she might be liable by the law of the land, did not make her then owe such future debts. That she then owned stock in the company created no liability, contingently or otherwise. The statute liability is upon those persons only who compose the company at the time of its dissolution. If the week before the dissolution Mrs. Eames had disposed of her stock, it will not be pretended that any liability would have attached to her in respect to the plaintiff's debt, or any other debt due and owing by the company. The fact that she held the stock of the company when she executed the trust deed has no bearing whatever on the question of her liability. A stockholder is not the guaran-

tor of debts which the corporation may contract, nor is there
any contract on his part, express or implied, to be responsible
for its debts.   It is only for a particular class of liabilities of
the corporation, and upon a certain class of stockholders—
those being such when it is dissolved—that any personal respon-
sibility is imposed.   The plaintiff's debt against the company
became a debt against Mrs. Eames when the company was dis-
solved by force of the statute, not before.

If, then, at the time she executed the trust deed she was in
no sense liable for or owed the plaintiffs the debt in question,
there is no ground for claiming that it was a debt provided for
in such conveyance.   It is absurd to assume that the trust
embraced the payment of a demand or liability that had no
existence at its creation, and when it depended altogether on a
contingency in the future whether the grantor would ever
become bound, and that contingency entirely under her con-
trol.

If it were conceded that liabilities, contingent or other-
wise, are provided for by the deed, it must be liabilities exist-
ing when the conveyance was executed, and for some existing
thing, and to some one who could be secured.   It should be at
least such a demand as would entitle a party, under the provi-
sions of the English bankrupt act, or our insolvent laws, to a
share in the insolvent or bankrupt estate.   There was no de-
mand or liability in this case which could be proved under the
bankrupt or insolvent laws, or on which any portion of the
bankrupt or insolvent estate could be paid, when the deed was
executed, or for more than twenty years afterward.   Young v.
Winter, 16 *C. B.* 401; Boorman *v.* Nash, 9 *Barn. & C.* 145;
Yallop *v.* Ebers, 1 *Barn. & Ad.* 698; Ford *v.* Andrews, 9 *Wend.*
312; Mechanics' & Farmers' Bank *v.* Capron, 17 *Johns.*
467; Doolittle *v.* Southworth, 3 *Barb.* 79; *Hill on Trustees,*
357.

Our statute provided that a discharge under the insolvent
laws should be a bar to all debts of the insolvent, whether due
or to become due, which existed at the time of the insolvent's
assignment; yet in Ford *v.* Andrews, *supra,* it was held that the
demand of the accommodation indorser of the insolvent's
note, due before the assignment, for money paid on the note

after the discharge of the maker was obtained, was not barred by the discharge. So, also, it was held in the Mechanics', &c. Bank *v.* Capron, *supra,* that when the insolvent was indorser on a note not due when his petition was filed, his discharge was no bar to an action on the indorsement after he had been properly charged as indorser. Both of these cases are manifestly stronger than the present one. There was a debt in existence; a creditor to deal with; an amount fixed to be liable for; and the insolvent had contracted, on a certain contingency, to be liable for a definite and existing debt. Here there was nothing of the kind at the date of the trust deed. It is impossible to conceive of a debt, demand or liability in respect to which it cannot be stated to whom it was owing, in whose favor it was incurred, what it was for when it was contracted, and when it matured. Yet none of these things could be stated in regard to the debt in suit at the execution of the deed. It became the debt of Mrs. Eames long afterward, not upon any contingent liability existing at the time of such execution, and subsequently becoming absolute, but because the statute had declared that the persons owning the stock of the Manchester Manufacturing Company at its dissolution should be individually responsible for the debts *then* due and owing by the corporation.

It cannot, therefore, be insisted, upon any reasonable construction of the deed of September, 1833, that the plaintiff's judgment is a debt within its provisions which the trustee is bound to pay out of the trust property. That deed only provided for the payment of existing liabilities. The debts are to be paid *pro rata,* and it manifestly was not intended that the trustee should wait twenty years before he paid them, to see if some debts should not be contracted by the manufacturing company which it would be unable to pay. Had there not been sufficient assets to pay conceded debts, the trustee would not have been justified in retaining any funds to pay debts like the plaintiff's that might possibly accrue on the dissolution of the corporation in an insolvent state. That is not the meaning of the deeds nor is the trust so expressed. It is expressed in these words: "To pay all my just *debts* of every description." "The intent and object of this clause being

fully to secure the payment *of all debts due from* ME *of* whatsoever nature the same may be." What debts? Manifestly the debts contracted and owing by the grantor when the deed was executed, and no other. This is the legal construction, and there is no language extending the trust to the payment of liabilities of Mrs. Eames other than those then incurred and owing by her. Certainly a debt that she should subsequently contract or be made liable for by statute is not within the terms of the trust. I think, therefore, that the judge was right in the conclusion that the plaintiff's debt, not existing at the time of the execution of the trust deed, but accruing in 1854, upon the dissolution of the company, did not come within the purpose of any of the trusts contained in such deed.

This disposes of the appeal upon the ground on which the action was presented by the pleadings, and tried in the court below, viz: assuming the trust deed to be valid, and claiming that the plaintiff's judgment against Mrs. Eames was a liability provided for by it. As the debt in suit was not a debt within the provisions of the deed, no case was made entitling the plaintiffs to a judgment in their favor. Were the question, however, presented by the case, whether the plaintiffs were entitled to have the deed set aside and the property subjected to the payment of their judgment, on the ground of fraud, or because it was a conveyance of personal estate reserving a use or benefit to the grantor, I should entertain an opinion adverse to the plaintiffs. Instead of being made with intent to defraud the creditors of Mrs. Eames, a primary object of the conveyance was to provide for the payment in full of all her debts. The plaintiffs were not her creditors at the time of the assignment, and there could have been no fraudulent intent respecting them. The statute condemns alienations of property made with intent to defraud creditors. As against them only it is declared the conveyance or assignment shall be void. 2 R. S. 137, § 1. The plaintiffs, therefore, not being the creditors of Mrs. Eames when the conveyance or transfer was made, were not in a position to assail its validity on the ground of fraud. But it is claimed that the deed is void as against the plaintiffs, by another statute. This statute declares that "all deeds of gift,

all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person." 2 R. S. 135, § 1. The conveyance of 1833 was of the real and personal estate of Mrs. Eames, and after providing for the payment of her debts out of the trust property, in terms reserved the income of the surplus and as much of the capital as should be required for her maintenance and support during her life. Because that this *use* was expressed in the deed, it is insisted that as against the plaintiffs, her *subsequent* creditors, it is void; and this without regard to any fraudulent intention. To this, various answers may be made. First, the conveyance was of both real and personal estate, and the former is not within or condemned by the statute. The trust as to the real estate, which constituted the bulk of the transfer, is unquestionably valid. Second, the statute only avoids conveyances, &c., of personal estate which are wholly to the use of the grantor. Third, if it were held to apply to transfers made for other objects, but containing a residuary interest or partial use for the · debtor, the whole grant would not be void, but only so much of it as is not sustained by the valid purposes for which it was made. The meaning of this statute (sometimes called the statute of personal uses) was fully considered in Curtis v. Leavitt, 15 N. Y. 9. It was there held that it applies only to conveyances, &c., wholly or primarily for the use of the grantor and not to instruments for other and active purposes, when the reservations are incidental and partial only; that if it can be applied to instruments executed for real and active purposes, such as to secure debts or procure money on loan, it avoids only so much of the grant as is not sustained by the valid purposes for which it was made. It does not avoid the entire instrument which contains the invalid use.

The judgment of the supreme court should be affirmed.

INGRAHAM, J.—The justice before whom this case was tried found that the debt due to the plaintiffs, for which this action was brought, did not exist at the time of the execution of the trust deed in 1833, but accrued in 1854. The complaint does

not aver that the trust deed was illegal, but asks to have the debt paid out of the property in the hands of the trustees, on the allegation that Mrs. Eames, the grantor, was the holder of the stock on which the liability arose. It must, therefore, be considered as assuming the validity of the trust, and asking to be paid by the trustees on account of the presumed liability, from her being the owner of the stock at the time of the conveyance, or on the ground that the stock passed to the trustee by the conveyance, and therefore he was liable.

There can be no difficulty in disposing of the first ground, by the statements that no doubt existed at the time of the trust deed from Mrs. Eames to the plaintiffs. It is true she owned the stock then; and if the debt had been due then from the company to the plaintiffs it would have been provided for under the trust deed, but the debt was not created till nearly twenty years after the assignment was made. There was no liability existing at the time of the execution of the deed, and none for which the trustees could have been called on for payment. The deed was not intended to cover, and did not provide for, any not then existing indebtedness, and not for debts to be incurred twenty years thereafter. It is idle to say that Mrs. Eames was then liable for a debt which was not contracted, and for which the principal debtor, the company, were not liable, and which had no existence till twenty years thereafter.

I think it is clear that the debt is not one contemplated by the trust deed, or one which the trustees could have paid out of the trust funds without violating the terms of the trust; and it is equally clear that there could be no relation back to the original liability of Mrs. Eames as a stockholder, so as to cover debts contracted by the company long after the trust deed was executed. It is, however, urged that the trustees are liable, as the owners of the stock under the trust deed, and as such owners they are indebted to the company.

I do not think the plaintiffs can now claim against the trustees to recover for them, on the ground that they were the owners of the stock, and therefore liable. They have established, by their judgment against Mrs. Eames, that she was the owner. If the trustees were the owners of the stock, their

Rome Exchange Bank *v.* Eames.

liability should be enforced by an action at law, and not by a proceeding in equity. The whole claim here is based upon a judgment against Mrs. Eames. There is no proof that the trustees held any stock at the dissolution, nor any evidence sufficient to charge them with any indebtedness as such trustees. The whole theory of the complaint is, that the trustees are liable, as such, for a debt due from Mrs. Eames, and not for a debt due from themselves.

It is suggested that the debt should be paid out of the income belonging to Mrs. Eames under the trust deed. The complaint does not contain the allegations necessary to make out such a claim, and, even if it did, I think there is no reason for allowing it in this case. The whole title to the property was in the trustees, subject to the trusts. The provision for her support was personal, not assignable, and not subject to debts subsequently incurred, and even that has ceased by her death.

The judgment should be affirmed.

DENIO, Ch. J.—1. A person free from debt may make a settlement of his estate for the benefit of his family, by conveying to them the whole interest, to take effect in possession immediately, or the reversion, to commence in possession at his death. So, if by the same deed he make a provision for the payment of all his debts out of the property settled, so that creditors are not and cannot be hindered and delayed. The beneficiaries named, other than Mrs. Eames, took a vested estate in reversion by this deed. The nominal consideration of one dollar raised a use, and made it a good deed of bargain and sale, and vested the reversion immediately in the beneficiaries.

2. The fact that Mrs. Eames was a stockholder in the Manchester Manufacturing Company did not disable her from making the settlement. It is not possible that she could be considered a debtor until the plaintiffs' debt was contracted, if she could be at any time before the dissolution of the company; and there is no pretense that the debt on which the judgment was recovered was contracted prior to the conveyance to Kirkland and Eames. The case is very much like that

IV.—7

of one entering into a copartnership, and committing the active management to the other copartners or to an agent. There is in such a case a liability to have debts contracted, which would render the new acting copartner a debtor, but he does not become such until a debt is actually contracted. Every person is liable to contract debts, and may create agencies under which debts binding him may be contracted, but until he has done so, or a debt has been actually contracted, he cannot make a conveyance which will be fraudulent against creditors, if he is under no other liability.

3. The plaintiff cannot, therefore, reach the the interest of the persons upon whom the reversion was settled. I have said that the estate of the beneficiaries, other than Mrs. Eames, was a vested estate; and I think it was such. If, however, it was contingent, on account of what is said respecting the law of descents and distribution which should be in force at Mrs. Eames' death, it would make no difference in my conclusion as to the validity of the deed. A person may create a contingent future estate as well as one vested in interest, if there is no illegal suspense of the power of alienation. The fact that there might be changes in the persons of the beneficiaries before the taking effect of the reversion in possession, does not prevent the vesting, the rule being that if there be persons in existence in whom the estate would vest in possession if the preceding estate should now terminate, the latent estate is a vested one.*

4. The remaining question is, whether the plaintiff is entitled to sequester the rents and profits payable to Mrs. Eames during her life, to satisfy its judgment. In determining this, we must consider the subject as wholly real estate. It originally consisted of both real and personal, but the latter has been appropriated to the payment of debts provided for in the trust deed. There is no direction in the deed to convert the real into personal, and the doctrine of equitable conversion has, therefore, no application. The securities now in the hands of the defendants are the proceeds of real estate sold, and are, therefore, so far as this question is concerned, to be considered

---

* See Sheridan *v.* House, in this volume.

real. At common law, I have no doubt that a conveyance of one's estate to trustees, reserving the income to the grantee for life, would render that income subject to the pursuit of creditors. It is against general principles that one should hold property, or a beneficial interest in property, by such a title that creditors cannot touch it. But our statute expressly permits such arrangements, where there is a valid trust, under the fifty-fifth section of an article concerning uses and trusts. It declares that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of, such interest, &c. 1 *R. S.* 730, § 63. This is not limited, like sections 18, 19, in the statute respecting the jurisdiction of the court of chancery, to trusts proceeding from another person. If the beneficiary cannot directly dispose of his interest, it is plain that he cannot, by contracting debts, put it in the power of another person to take and convert it so as to deprive the beneficiary of it. I have elsewhere stated what I conceive the motive of this peculiar exemption to have been; but that whatever the system was upon which it was enacted, the courts are bound to execute the will of the legislature. Graff *v.* Bonnett, 31 *N. Y.* 9. I am of opinion that the rents and profits of this trust property can no more be reached than the capital.

5. It has been argued, that inasmuch as this stock in the manufacturing company passed to the defendants, the trustees, by the trust conveyance, the other trust property should be chargeable with this debt. Passing by other objections which might be urged against this view, it is enough to say that the plaintiff has no judgment against the trustees. He has elected to consider Mrs. Eames as the stockholder who is liable for the debt, and is therefore estopped from taking the ground that the trustees were the stockholders.

It follows from what has been said that the judgment of the supreme court is right, and ought to be affirmed.

All the judges concurred.

Judgment affirmed, with costs.