Thomson, J.,
delivered the opinion of the court.
This suit was brought upon the following undertaking for injunction:
*453 “ Petition of The Bachelor Transportation Company in the suit of Mason B. Carpenter and William N. McBird,
Plaintiffs. \
vs.
The Wason Toll Road Company and William H. Cochran,
Defendants.

Undertaking on Injunction.

“ Whereas, The above named petitioner has filed a petition in the above action in the District Court of the Second Judicial District of the State of Colorado, in and for the said County of Arapahoe, against M. Y. B. Wason, Receiver in said action, and has applied for and obtained a temporary-restraining order against said M. V. B. Wason, as said Receiver, enjoined and restraining him from the commission of certain acts, as in the petition filed in the said action is more particularly set forth and described, and as set forth in said restraining order.
“ Now, Therefore, we, the undersigned, residents of the County of Arapahoe, State of Colorado, in consideration of the premises, and of the issuing of said restraining order, do jointly and severally undertake in the sum of three thousand dollars, and promise to the effect, that, in case said order shall issue, the said plaintiff will pay to the said Wason as Receiver, all such costs and damages as shall be awarded against the complainant in case the said injunction shall be modified or dissolved in whole or in part.
“Dated this 16th day of December, A. D., 1893.
“ The Bachelor Transportation Company,
“ By C. H. Pierce, Its Attorney.
“W. H. Bryant,
“ C. S. Thomas.”
The injunction was ‘dissolved, and the plaintiff, receiver, brought this action to recover his costs and damages.
The undisputed facts as they appear from the evidence *454 are as follows: After the injunction was dissolved, the receiver brought suit upon the undertaking against The Bachelor Transportation Company, and Thomas and Bryant, in which judgment was rendered against the Transportation Company, alone, for $1,130. When Thomas and Bryant signed the undertaking, they exacted and received an indemnifying bond, in which the obligors covenanted to make good to them whatever loss they might sustain by reason of the undertaking which they had signed. Summons had been served on the Transportation Company some time before service was had upon them, and at the time judgment was rendered against the company the period within which they were required to answer had not expired. An execution was issued upon the judgment, and by means of it the sum of $4,300 of money belonging to the Transportation Company was secured. About a month after the rendition of the judgment, an agreement was entered into between the attorneys representing the receiver and the company respectively, which provided that the judgment against the company should be vacated, and the execution recalled, and another judgment entered against all the defendants, the attorneys for the receiver stipulating to make the money, if possible, out of the defendants other than the company. In accordance with this agreement the judgment against the company was set aside, the execution recalled, the money which had been secured released, and a new judgment entered against the Transportation Company and the sureties, Thomas and Bryant, jointly, and an execution issued upon it against Thomas and Bryant. Until the issuance of this execution the latter had no knowledge of the agreement we have mentioned, or of any of the proceedings which were subsequently had in the case. Thomas and Bryant having received information of the agreement, and of the subsequent proceedings, upon their application the judgment was set aside as to them, and they answered; and the trial which followed resulted in a judgment against them for $808.70, from which they *455 have prosecuted an appeal to this court. Upon this trial the facts appeared as we have detailed them.
Several points are made for a reversal of the judgment, but the only question which we deem it important to consider concerns the effect of the proceedings of the plaintiff in relation to the judgment against the Transportation Company upon the liability of the sureties. In Brandt on Surety-ship and Guaranty, section 378, we find the following general rule laid down : “ If the creditor recovers a'judgment against principal and surety, or against the principal alone, and execution is issued thereon and levied upon real or personal property of the principal subject thereto, and such property is, by the act of the creditor, released from the levy, and lost as a security, the surety is discharged to the extent that he is injured thereby.” The doctrine of the text is fully sustained by the adjudications. But we are met on behalf of the plaintiff by the proposition, as an exception to this general rule, that where sureties are indemnified they are not released by a release of the principal; and it is contended that the facts of this case bring it within the exception. As sustaining this proposition we are cited to the following adjudged cases. Moore v. Paine, 12 Wend. 123; Hubbell v. Carpenter, 5 N. Y. 171; Chilton v. Robbins, 4. Ala. 223; Morrison v. Bank, 65 N. H. 253; Jones v. Ward, 71 Wis. 152.
If counsel’s doctrine is correct, a release of the principal debtor cannot be pleaded by the indemnified surety, no matter what may be the nature of his indemnity. We think the proposition is too comprehensive ; and, except within limits outside of which this case falls, it is not sustained by the decisions to which we have been referred. In Moore v. Paine, the sureties were secured by a bond and warrant of attorney,, executed by the principal for the payment of $1,000, and authorizing the confession of judgment against him for the amount. The bond and wai’rant were executed with the intent to place money in the hands of the sureties to enable them to pay the bond on which they were sureties. They caused a judgment upon their bond to be entered, and col *456 lected upon the judgment $750, which they retained. The amount for which they were liable as sureties was $500. The court said : “ The sureties received from the debtor the whole amount to become due on the bond in question, and after that, as between him and them, they were the principals and owed the debt.” In Chilton v. Robbins, the sureties had obtained from the principal a deed of trust on property to secure themselves against liability on their suretyship, which was ample for that purpose. The court held that the taking of the trust deed was, in effect, an appropriation by them of that portion of the effects on the principal to the payment of the debt. The court, in Jones v. Ward, illustrated the rule by which it held the indemnified sureties liable, notwithstanding the release of the principal, as follows: “ A. becomes security for B. to C. for the payment of $1,000. B. puts property into the hands of A., worth $1,000, to indemnify him against loss because of the obligation thus assumed by him. C. releases B., the principal debtor, from all liability on account of the debt, but receives no payment thereon. A., the .surety, then sells the pledged property for $1,000, and retains the proceeds. It is entirely reasonable and just that, notwithstanding the release of the principal debtor, C. should have his remedy against the surety for the amount realized by him in the sale of the pledged property.” The decision in Hubbell v. Carpenter was simply that a surety by refusing to take the control of a judgment and execution against the principal debtor, when offered to him by the creditor, might deprive himself of the right to demand subrogation, when the debt was sought to be collected from him. There was no question of indemnity in the case. The decision in Morrison v. Bank is equally inapplicable.-
Where a surety for the purpose of his indemnification has obtained possession or control of property or money of the principal debtor, sufficient for the payment of the debt, and which would otherwise be available to the creditor for that purpose, to permit him to retain the security and repudiate the obligation would be unjust, whether the principal was *457 released or not; and it is in such cases that the courts have held that the release of the principal debtor does not discharge the surety. We think that the exception to the general rule must be confined to this class of cases, and that it cannot be extended to the case of an indemnifying bond executed by other sureties, without abrogating the rule itself.
The defendants, Thomas and Bryant, as sureties on the injunction undertaking, were indemnified by a bond executed by a number of persons, conditioned for the payment of such damages as they might sustain by reason of their suretyship on the undertaking. This bond was executed at the instance of The Bachelor Transportation Company, or persons acting in its behalf. The obligors upon this bond were sureties for the Transportation Company. If the company should fail to pay the damage awarded against it, they were the persons who Avere ultimately liable, and they Avould be directly affected by a release of the company from its liability. As against them, neither the receiver, nor Thomas and Bryant, had the right to discharge the company, or relinquish the money Avhieh had been taken by the execution. They were immediately interested in having that money applied in the payment of the judgment; and if Thomas and Bryant had failed in this suit to avail themselves of the transaction between the receiver and the company, their right of action upon the indemnifying bond Avould have been lost. If they had set idly by and suffered judgment, to which the plaintiff Avas not entitled, to go against them by default, they could not compel reimbursement from the indemnifying bondsmen. The rights of the latter could not be Avantonly sacrificed, either by the act of the receiver, or the negligence of Thomas and Bryant. The defense made‘by Thomas and Bryant was therefore proper. It was one Avhieh they had the right to interpose, and which, in justice to the persons securing them, it Avas their duty to interpose.
But there is another ground, unconnected with any question of indemnity, upon which we can dispose of the case with equal satisfaction to ourselves. The undertaking was *458 that the Transportation Company would pay to the receiver all such costs and damages as should be awarded against it, in case the injunction should be modified or dissolved in whole or in part. To fix the liability of the sureties there must be a judgment against the company. Code, section 161, provides that in suing on such an undertaking, it shall not be necessary to bring suit in the first instance against the principal to ascertain the amount of damages sustained; but that principal and surety may be sued together, and damages assessed and awarded against both. Without this provision it would be necessary to obtain judgment against the principal before proceeding against the surety. The code simply permits a joint action. It does not forbid a suit against the principal first, and parties are at liberty to proceed in that manner if they so desire. This action was brought against the principal and the sureties jointly; but the plaintiff saw fit to take judgment against the principal alone. That judgment was regular and valid. Execution issued; and more money than sufficient to pay the judgment was secured. This money was voluntarily released by the plaintiff. When the money was levied upon, the purpose for which the undertaking was given was accomplished. As the undertaking was that the company would pay the judgment, if it had voluntarily done so, the moment the payment was made the right of action upon the undertaking was extinguished ; and no subsequent return of the money to the company could revive it. Instead of being paid voluntarily, however, the money was seized by execution. It thus passed within the control of the plaintiff for the purpose of paying the judgment; it was as available for that purpose as if it had been delivered to the plaintiff by the company; its seizure by the execution was equivalent to payment by the company, and by a payment, whether voluntary or compulsory, the condition of the undertaking was satisfied. The plaintiff released the money, aqd suffered it to be returned to the company at his own peril. When the money, sufficient for the payment of the judgment, came within the con *459 trol of the plaintiff, and might have been used to discharge the judgment, all liability upon the undertaking was extinguished, and the instrument could not thenceforth be made the foundation of an action.
The judgment must be reversed.

Reversed.